# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JUSTIN THURMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 16-CV-554-TCK |
| | ) |
| JANICE STEIDLEY; | ) |
| LARRY STEIDLEY; and | ) |
| OFFICE OF THE DISTRICT ATTORNEY | ) |
| FOR DISTRICT 12, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court are the Motion to Dismiss for Failure to State a Claim of Defendant Office of the District Attorney for District 12 (Doc. 9); and the Joint Motion to Dismiss of Larry Steidley and Janice Steidley for Lack of Subject Matter Jurisdiction and Failure to State a Claim (Docs. 22, 23).

## I. Complaint

In his Complaint (Doc. 1-1), Plaintiff Justin Thurman ("Thurman") alleges the following facts. On April 14, 2014, Thurman was arrested and jailed in the Rogers County Detention Center ("Jail"). After pleading guilty, he was enrolled in the Rogers County Drug Court Program ("Drug Court Program"). After suffering a relapse that resulted in a new arrest, Thurman was again detained in the Jail.

Following a May 2014 hearing regarding Thurman's new criminal charges, an unidentified woman claiming to work for Defendant Janice Steidley, who was then the Rogers County District Attorney ("DA Steidley"), contacted Thurman's mother, Diana Thurman ("Ms. Thurman"). This woman told Ms. Thurman she had reservations about the conduct of the police in Thurman's case

and asked if Ms. Thurman was interested in discussing the matter further. Ms. Thurman agreed and was instructed to meet at the office of DA Steidley's husband, Larry Steidely ("Mr. Steidley"), who is also an attorney. Mr. Steidley and the unidentified woman reviewed Thurman's file with Ms. Thurman and indicated that DA Steidley "wanted to help her son." (Compl. ¶ 9.)

A few days later, Ms. Thurman drove to Claremore Lake for a meeting with DA Steidley and Mr. Steidley (the "Steidleys"). The Steidleys and the unidentified woman were seated in the backseat of a black vehicle. The driver of the vehicle got out and instructed Ms. Thurman to get into the backseat. The Steidleys told Ms. Thurman they wanted to help her son, but they also needed something from her. According to the Complaint, the Steidleys revealed their plan to "set up" the Sheriff of Rogers County ("Sheriff"). The Sheriff had led a petition against DA Steidley that resulted in a grand jury investigation and a 74-page report critical of DA Steidley.

The Steidleys' alleged plan was for Ms. Thurman to dress provocatively, entice the Sheriff to consume alcohol, and elicit "embarrassing or humiliating statements" from him. (*Id.* ¶ 14.) At the end of this meeting at Claremore Lake, DA Steidley allegedly told Ms. Thurman not to tell anyone about their meeting and also stated that jail can be a dangerous place. The unidentified woman told Ms. Thurman that she needed to help them because people died in jail all the time, and it would be a shame to find her son hanging in his cell. As a result of these perceived threats, Ms. Thurman participated in the scheme over the next several months, meeting with the Sheriff at various places and reporting back to Mr. Steidley, who would give her further instructions and suggestions. At one point during the scheme, the Steidleys also convinced Ms. Thurman to write a false narrative stating that she abused her son in order to help him obtain a better plea deal.

Thurman alleges that DA Steidley and/or the Office of the District Attorney for District 12 ("DA's Office") allowed Thurman into the Drug Court Program but then "repeatedly frustrated [his] ability to leave the jail or start any treatment program." (*Id.* ¶ 20.) DA Steidley and the DA's Office allegedly rejected treatment programs proposed by Thurman and his attorney as a "pretext" to keep Thurman detained in order to maintain leverage over Ms. Thurman. Thurman claims that he "continued to languish in the Rogers County Jail until his release on December 3, 2014." (*Id.* ¶¶ 21-22.) Thurman alleges that the Steidleys caused Thurman to "remain in the Rogers County Jail much longer than any reasonable detention under these circumstances" for their own personal gain in an intentional, willful, and reckless manner that shocks the conscience. (*Id.* ¶ 26.) He further alleges that DA Steidley exercised authority over Thurman as the top law enforcement official in Rogers County.

At some point after Steidley lost the primary in the next election, Ms. Thurman contacted the Oklahoma State Bureau of Investigations ("OSBI") and informed it of the Steidleys' scheme against the Sheriff. OSBI urged Ms. Thurman to continue participating in the scheme so that OSBI could use her as an informant to gather evidence against the Steidleys. In January 2015, DA Steidley left office.

In his Complaint, Thurman asserts the following claims: (1) 42 U.S.C. § 1983 claim against the Steidleys premised on deprivation of his Fourteenth Amendment right to procedural due process; (2) *Bosh* claim[1] against the Steidleys and the DA's Office premised on deprivation of his procedural due process rights set forth in article 2, section 7 of the Oklahoma Constitution; (3) 42 U.S.C. § 1983

---

[1] A *Bosh* claim refers to the cause of action created by the Oklahoma Supreme court in *Bosh v. Cherokee County Building Authority*, 305 P.3d 994 (Okla. 2013).

claim against the Steidleys premised on their deprivation of his Fourteenth Amendment right to substantive due process; (4) *Bosh* claim against the Steidleys and the DA's Office premised on deprivation of his substantive due process rights set forth in article 2, section 7 of the Oklahoma Constitution; and (5) negligence claim against the DA's Office for negligently administering the Drug Court Program in a manner that allowed for manipulation by the Steidleys.

II. **Additional Facts Derived from State Court Criminal Records ("State Court Records")**

The Steidleys relied upon state court judicial records – namely, Thurman's criminal record dating back to January 18, 2007 – in support of their motion to dismiss for lack of subject matter jurisdiction and motion to dismiss for failure to state a claim. Thurman did not object to the Court's consideration of the records, dispute the records, argue that the records constituted evidence outside the pleadings, request discovery to respond to the records, or discuss the records in any manner in his response brief.

The State Court Records reflect the following sequence of events. On April 17, 2007, Thurman pled guilty to five charges in CF-2007-294, Tulsa County, Oklahoma. (Steidleys' Mot. to Dismiss, Ex. 1.) On August 26, 2008, Thurman pled guilty to five different charges in CF-2007-5659, Tulsa County, Oklahoma. (*Id.*, Ex. 2.) On October 23, 2013, Thurman pled guilty and was convicted of driving under the influence ("DUI") and transporting an open container of liquor in CF-2013-259 ("2013-259"), Rogers County, Oklahoma, for which Thurman received an eight-year suspended sentence. (*Id.*, Ex. 3.)

On December 3, 2013, Tulsa County District Community Corrections officials filed a "Violation Report" alleging Thurman violated two conditions of his probation in 2013-259, after he was in a one-vehicle accident that occurred on October 28, 2013. The report states:

4

Although Thurman continued to use alcohol after being sentenced four days prior on his Rogers County case, this officer feels that be has not had time to get treatment for his addiction. Thurman is scheduled to attend intensive inpatient treatment at the House of Hope in Grove, Oklahoma on December 10, 2013. This officer believes if Thurman abstains from any alcohol consumption, he will be a productive citizen in society. Therefore, this officer respectfully requests Thurman be court-ordered to participate in the SCRAM program for the remainder of his probation and be ordered to complete DUI Court in Rogers County.

(*Id.,* Ex. 4.) As a result of this accident, new criminal charges were filed in CF-2013-00440 ("2013-440"), Mayes County, Oklahoma, for DUI and transporting an open container of liquor. Thurman was admitted into the Drug Court Program on January 7, 2014. On March 10, 2014, Defendant pled guilty and was convicted of DUI and transporting an open container of liquor in 2013-440, for which Defendant received a ten-year suspended sentence with "2 years District Attorney supervised probation." (*Id.*, Ex. 5.)

On April 14, 2014, Chrissie Stone ("Stone"), Drug Court Program Coordinator, submitted a "Violation Report" in 2013-259 to Rogers County Associate District Judge Sheila Condren and Assistant District Attorney for Rogers County, Timothy Wantland ("Wantland"). This report provides:

[Thurman] pled into the Rogers County Drug Court Program on January 27, 2014. At the time of his plea under oath he agreed that he had read and understood the rules of the Rogers County Drug Court Performance Contract. The defendant completed his Drug Court Intake on January 27, 2014. At the time of his intake he once again agreed that he understood the Rules and Conditions of the Rogers County Drug Court. The defendant is in violation of this said contract in the following manner:

Violations:
1. The defendant failed to appear for a required Drug Screen on March 29, 2014.
2. The defendant had a dilute UA on April 4, 2014.
3. The defendant a positive Drug Test for Alcohol on April 8, 2014.
4. The defendant failed to appear to his Drug Court Review Docket on April 11, 2014.

5

> 5. The defendant was instructed to report the Rogers County Drug Court Office by 4:00 PM on April 14, 2014. The defendant failed to report as instructed.
>
> Previous Sanctions:
> 1. The defendant has had no previous sanctions while in the Drug Court Program.
>
> Recommendation: Due to the defendant being AWOL from the Rogers County Drug Court Program it is recommended that the State of Oklahoma file an Application to Remove the defendant at this time.

(*Id.,* Ex. 6.) Also on April 14, 2014, Wantland filed an Application for Removal from Drug Court and Request for Sentencing Pursuant to Plea Agreement in 2013-259, setting forth the same violations described by Stone above. (*Id.,* Ex. 8.)

On April 28, 2014, Thurmam was charged with assault and battery of an officer, resisting arrest, and public intoxication in a new criminal case, CF-2014-283 ("2014-283"), Rogers County, Oklahoma. (*Id.,* Ex. 7.)[2] On August 22, 2014, Judge Condren approved certain modifications to Thurman's Rogers County Drug Court Performance Contract. On September 18, 2014, represented by counsel Ernest Eugene Haynes ("Haynes"), Thurman entered into a plea agreement whereby he entered nolo contendere pleas to certain charges in 2014-283. Also on September 18, 2014, Judge Condren sentenced Thurman to a six-months custodial sentence, with credit for time served. Assuming Thurman was detained on April 28, 2014 following his arrest for public intoxication and assault on an officer, he had served almost five months in the Jail on the date of his sentencing. The State Court Records do not show Thurman's release date. According to the Complaint, Thurman was released on December 3, 2014.

---

[2] Because they are not mentioned in Stone's Violation Report, these offenses appear to have been committed sometime between April 14, 2014 and April 28, 2014. The incident forming the basis of the charges in 2014-283 was apparently the "new arrest" and "relapse" referenced in the Complaint.

6

**III. Steidleys' Motion to Dismiss § 1983 Claims**

The Steidleys move to dismiss the § 1983 claims pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"), arguing the Court lacks subject matter jurisdiction because Thurman lacks standing to sue.[3] Standing is a threshold requirement in every federal case. *Bd. of Cty. Comm'rs of Sweetwater Cty. v. Geringer*, 297 F.3d 1108, 1111 (10th Cir. 2002). If a plaintiff lacks standing, the case must be dismissed for lack of federal subject matter jurisdiction. *Id.* (explaining that constitutional standing "derives from Article III of the U.S. Constitution, which restricts federal courts' jurisdiction to suits involving an actual case or controversy"). A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may take the form of a facial attack or a factual attack on the complaint. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir.1995). In cases involving a facial attack, a court construes the allegations in the complaint as true. *Id.* In cases involving a factual attack, where a complaint challenges the facts upon which jurisdiction depends, a court may not presume the truthfulness of the allegations and has "wide discretion to resolve disputed jurisdictional facts." *Id.* at 1003. A court is, however, required to convert a factual jurisdictional attack into a Rule 12(b)(6) or a Rule 56 summary judgment motion when "resolution of the [Rule 12(b)(1)] motion is intertwined with the merits of the case." *Id.*

The Court construes the Steidleys' Rule 12(b)(1) motion as a facial attack on the allegations in the Complaint.[4] Although the Steidleys attached the State Court Records, they do not dispute or challenge any factual allegations in the Complaint for purposes of their Rule 12(b)(1) motion.

---

[3] The Steidleys make several other arguments in support of their motion. Because the Court grants their Rule 12(b)(1) motion, the Court does not reach their other arguments.

[4] Because the Court deems the attack to be a facial attack, the Court need not determine if jurisdictional questions are intertwined with the merits.

Instead, they simply urge the Court to take judicial notice of the State Court Records in considering their Rule 12(b)(1) facial attack. The Court finds it proper to take judicial notice of the State Court Records and consider such records for purposes of the Steidleys' jurisdictional attack. *See St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (explaining that "federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue"). Accordingly, the Court considers the Complaint and State Court Records in reaching its conclusion on standing.

In order to overcome the Steidleys' challenge to standing, Thurman bears the burden of showing: (1) he has personally suffered an injury in fact; (2) the injury is fairly traceable to the challenged action of the Steidleys; and (3) it is likely, not merely speculative, that his injury will be redressed by a favorable decision. *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1204 (10th Cir. 2001). At this pleading stage of the proceeding, Thurman need not prove the merits of his underlying claim but must show "a facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement." *Id.* The Steidleys challenge Thurman's ability to satisfy the second and third elements – namely, that Thurman suffered any injury in fact or that such injury is fairly traceable to any of the Steidleys' alleged conduct.

    **A.**    **Injury in Fact**

Thurman alleges the injury of "overdetention" based on the Steidleys' actions of purposefully prolonging the period of time from his arrest on April 28, 2014 and his release on December 3, 2014, in order to maintain leverage over Ms. Thurman. Accepting as true that Thurman was detained at the Jail longer than necessary to effectuate his plea and sentence, the Court

8

finds that wrongful "overdetention" constitutes a concrete, particularized injury suffered by Thurman personally.

### B. Traceability

Traceability of a plaintiff's harm to the defendant's actions need not need to rise to the level of proximate causation; however, Article III requires "proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005). If speculative inferences are required to connect the injury to the challenged action, this burden has not been met. *Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1225 (10th Cir. 2008). Where an independent action of a third party not before the court was the direct cause of harm, causation may be lacking. *See id.*

Thurman lacks constitutional standing due to his inability to trace any period of his detention to actions of the Steidleys. During the approximate seven-month period of detention in the Jail, Thurman was represented by Haynes. Haynes made numerous appearances before Judge Condren during this period, both with and without Thurman present. On June 3, 2014, Judge Condren set a plea date for June 19, 2014. On June 17, 2014, Haynes requested a continuance to allow time to explore the option of a "VA treatment center in Arkansas." (Mot. to Dismiss, Ex. 7 at 109.) On July 22, 2014, at a hearing before Judge Condren, Haynes requested another continuance to "speak with Cherokee's [sic] about funding for New Hope or Harbor House." (*Id.*, Ex. 7 at 110.) On August 19, 2014, Haynes reported to Judge Condren that Thurman was on the New Hope waiting list. (*Id.*) Represented by counsel, Thurman entered into a plea agreement and was sentenced on September 18, 2014.

Instead of "languishing" in the Jail, the State Court Records demonstrate that detention was delayed while his counsel attempted to locate an inpatient treatment facility. Further delays occurred while Thurman waited for an open bed. Based on these facts, any "overdetention" that occurred cannot be plausibly traced to the alleged nefarious actions of the Steidleys. Accepting all allegations as true regarding the alleged scheme, the Complaint does not allege that the Steidleys conspired with Haynes or Judge Condren. These were the two actors primarily responsible for the period of time that elapsed before Thurman entered his drug court plea and received his sentence. Even assuming the Steidleys committed every act in the Complaint, it is not likely or even plausible they influenced or somehow controlled Thurman's own counsel and Judge Condren, thereby causing the alleged "overdetention" injury. Instead, if any overdetention occurred, it was caused by third parties not before the Court in this case. If the Steidleys were unfairly influencing the process, forcing Wantland to reject drug treatment suggestions made by Haynes, or otherwise causing unnecessary delays in the drug court proceedings, Haynes had numerous opportunities to complain to Judge Condren or demand Thurman's release, neither of which occurred. In light of the undisputed State Court Records, there are too many speculative inferences required to connect the Steidleys to the allegedly prolonged detention. In short, there is no "case or controversy" between Thurman and the Steidleys because too many other, benign actors were involved in the detention process. Accordingly, the Court finds that Thurman's allegations are not sufficient to survive a facial attack on the issue of traceability, and that the Court lacks subject matter jurisdiction over both of Thurman's § 1983 claims.

## IV. Remaining State Law Claims

The Court declines to exercise supplemental jurisdiction over the remaining state-law claims – namely, the *Bosh* claims against the Steidleys and the DA's Office and the negligence claim against the DA's Office. *See* 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction once district court has dismissed all claims over which it has original jurisdiction). First, the Court's standing analysis does not necessarily dispose of the *Bosh* claims because the standing inquiry is not identical under state law. *See generally Toxic Waste Impact Grp., Inc. v. Leavitt*, 890 P.2d 906, 914 (1994) (Opala, J., concurring) (explaining that "[s]tanding in the federal legal system is imbued with a constitutional/jurisdictional dimension, while in the body of state law it fits under the rubric of ordinary procedure" and that "Oklahoma's fundamental law places no restraint on the judiciary's power analogous to the federal case-or-controversy requirement"). Further, remaining aspects of the pending motions to dismiss raise issues better decided in state court. *See Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

## V. Conclusion

The Joint Motion to Dismiss of Larry Steidley and Janice Steidley for Lack of Subject Matter Jurisdiction and Failure to State a Claim (Docs. 22, 23) is GRANTED in part as to Thurman's § 1983 claims. Thurman's § 1983 claims are dismissed without prejudice based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

The Court declines to exercise supplemental jurisdiction over the remaining state law claims, and this matter is REMANDED to Rogers County District Court, Case No. CJ-2016-283.

The Court does not rule on the remaining parts of the Steidleys' motion related to the state-law claims, and those aspects of the motion remain pending upon remand. The DA Office's motion to dismiss (Doc. 9) addresses only state-law claims and also remains pending upon remand.

**SO ORDERED this 5th day of May, 2017.**

**TERENCE KERN**
**United States District Judge**